# In the United States Court of Federal Claims

No. 24-1375C
Filed: December 5, 2024[*]
FOR PUBLICATION

|  |
|---|
| **RADIANCE TECHNOLOGIES INC.,** *Plaintiff*, v. **UNITED STATES,** *Defendant*. |

*W. Brad English*, Maynard Nexsen PC, Huntsville, AL; *Emily J. Chancey*, *Michael R. Pillsbury*, *Taylor R. Holt*, *Hunter M. Drake*, *and Holdon D. Guy*, Maynard Nexsen PC, of counsel, for the plaintiff.

*Steven M. Mager*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Maj. Joseph Van Dusen, Capt. Natalie McKiernan*, and *Timothy Wasyluka*, United States Army, of counsel, for the defendant.

## MEMORANDUM OPINION

**HERTLING**, Judge

In this pre-award bid protest, the plaintiff, Radiance Technologies Inc. ("Radiance") challenges the decision by the defendant, acting through the U.S. Army ("Army"), to include in a solicitation for a task order a requirement that offerors recertify their status as a small business.

Radiance holds a contract under the Army's One Acquisition Solution for Integrated Services ("OASIS") indefinite delivery, indefinite quantity ("IDIQ") contract.[1]  The OASIS

---

[*] Pursuant to the protective order in this case, this opinion was filed under seal on November 26, 2024, and the parties were directed to propose redactions of confidential or proprietary information by December 4, 2024.  The parties did not propose any redactions.  Accordingly, the opinion is released in full.

[1] Although the OASIS contract is used by Defense Department components, it was issued by the General Services Administration ("GSA").  (AR 6.)  An IDIQ contract "allows an agency to issue a broad solicitation for a general procurement goal and then more detailed solicitations for

contract that Radiance holds is within a contract pool available only to small businesses.

In May 2024, the Army issued a request for proposals under Federal Acquisition Regulation ("FAR") 16.5 to small-business holders of the OASIS contract for a task order to provide systems engineering and technical assistance to the Army's Rapid Capabilities and Critical Technologies Office ("RCCTO"). The solicitation requires offerors to recertify their small-business status.

Radiance was a small business when it was awarded its OASIS IDIQ contract but admits that it no longer meets that qualification. It challenges the solicitation's recertification requirement. Radiance argues that its OASIS IDIQ contract is governed by the 2014 provisions of the FAR, under which the Army may not require Radiance to recertify that it remains a small business to be eligible to compete for the RCCTO task order.

After unsuccessfully challenging the recertification requirement at the Government Accountability Office ("GAO"), Radiance brought this protest on September 4, 2024, asserting that the Army has neither the authority nor the discretion to require small-business size recertification at the task-order level for OASIS contract holders that met the qualifications to be a small business at the time the IDIQ contract was awarded in 2014. Radiance seeks an injunction requiring the Army reissue the solicitation without the recertification requirement.

The defendant has moved to dismiss, arguing that, under the Federal Acquisition Streamlining Act ("FASA"), the Court of Federal Claims lacks jurisdiction to consider protests brought "in connection with the issuance or proposed issuance of a task or delivery order." 41 U.S.C. § 4106(f). This so-called FASA "task-order bar" precludes the Court of Federal Claims from exercising jurisdiction over the plaintiff's protest.

The plaintiff's challenge to the solicitation's recertification requirement is a challenge "in connection with the issuance or proposed issuance of a task or delivery order." Accordingly, the defendant's motion to dismiss is granted, and the plaintiff's motion for judgment on the administrative record is denied.

I.   **FACTUAL BACKGROUND**

Since 2014, Radiance has held an OASIS IDIQ contract within the class reserved for small businesses ("OASIS-SB"). (AR 6.) OASIS-SB contractors provide program-management, management-consulting, scientific, engineering, logistics, and financial-management services to Defense Department components. (AR 14-18.)

In 2014, OASIS-SB contracts were available to businesses with 1,000 or fewer employees. (AR 40.) In addition to meeting this size limitation upon initial award, all OASIS-

---

individual task orders as specific needs arise." *22d Century Techs., Inc. v. United States*, 57 F.4th 993, 996 (Fed. Cir. 2023).

SB contract holders had to recertify that they still met the size limitation two to four months prior to the end of the contract's fifth year, the halfway point of the 10-year contract.[2]  (AR 36.)

On February 8, 2024, the Army issued a request for information to assist in its market research for a task order to be available to OASIS-SB contract holders to "provide systems engineering and technical assistance support for the" RCCTO.  (AR 366.)  Radiance currently provides these services as the incumbent contractor under a different task order.  (AR 379.)

On April 10, 2024, the Army issued a draft request for proposals for the RCCTO task order to OASIS-SB contract holders.  (AR 398.)  The cover letter instructed contractors to "provide comments/feedback regarding the draft documents" but noted that "questions . . . are not being solicited and will not be answered."  (*Id.*)  The Army "anticipated that the final [task order requirement package] w[ould] be released in the near future."  (*Id.*)  The draft solicitation included a proposed provision to require offerors to "re-certify their business size/economic status with submission of [their] proposal."  (AR 384.)

In response, Radiance asked the Army to remove the recertification requirement.  (AR 540-41.)  In response, the contracting officer asked the GSA whether the proposed recertification requirement was permissible.  In response to the contracting officer's inquiry as to whether she had the "discretion to require offerors to re-certify," a GSA official replied that the FAR "allows for the ordering contracting officer to require a re-representation of size . . . for a particular order under a multiple award contract."  (AR 549.)  That GSA official also advised that the Army could reject an offer from an OASIS-SB offeror that was no longer a small business if the solicitation required recertification.  (*Id.*)

Following the GSA response to its inquiry, the Army issued the solicitation for the RCCTO task order on May 20, 2024.  (AR 601-48.)  The solicitation is for a cost-plus-fixed-fee task order with a three-year base period and a single two-year option period.  The final solicitation includes the recertification requirement.  (AR 585.)

Radiance protested the solicitation's recertification requirement at the GAO on May 24, 2024.  (AR 978-86.)  It argued that the requirement was "unduly restrictive of competition and

---

[2] In full, the OASIS-SB contract's recertification requirement provides that the contractor "shall re-represent its size and socio-economic status upon the occurrence of any of the following: (1) [w]ithin 30 days after execution of a novation agreement (2) [w]ithin 30 days after a merger or acquisition that does not require a novation, and (3) [w]ithin 60 to 120 days prior to the end of the fifth year and prior to exercising Option 1."  (AR 36.)  If a contractor's recertification at any of these times reflected that it was no longer a small business, it could "continue performance of active task orders, but [could] not have their OASIS SB Option exercised."  (*Id.*)  The contract further provides that "at the end of the fifth year of this contract, if the Contractor's size standard remains a small business concern . . . the Contractor's Option I will be exercised and the Contractor will remain a small business concern . . . for the remaining period of performance of the contract.  (AR 37.)

not authorized by law." (AR 978.) While Radiance acknowledged that the current version of FAR 52.219-28(c) expressly authorizes a contracting officer to require recertification at the task-order level, it argued that the current version of the regulation post-dated the award of the OASIS-SB contract. Radiance argued that the version of that regulation in place at the time it was awarded the OASIS-SB contract applies and does not allow for such discretion. (AR 982-83.) As a result, Radiance contended, the contracting officer could not require offerors for the RCCTO task order to recertify their size. (*Id.*)

The GAO denied Radiance's protest. While the GAO did not dispute Radiance's explanation of the FAR regulations in place at the time of Radiance's OASIS-SB award, it relied on 13 C.F.R. § 121.404(g)(3), an SBA regulation adopted in 2006 and in effect at the time Radiance was awarded the OASIS-SB contract, to reject Radiance's protest. The GAO explained that the SBA regulation "allow[s] a contracting officer to seek recertification of [a] firm's size status before placing an order." (AR 1736 (citing *Enterprise Info. Servs., Inc.*, B-403028, Sept. 10, 2010, 2010 CPD ¶ 213 at 4, 4 n.6).)

## II.   PROCEDURAL HISTORY

The plaintiff filed this protest on September 4, 2024. (ECF 1.) It moved for judgment on the administrative record on October 9, 2024. (ECF 20.) On October 23, 2024, the defendant moved to dismiss and cross-moved for judgment on the administrative record. (ECF 21.) The plaintiff responded on October 30, 2024 (ECF 22), and the defendant replied on November 6, 2024 (ECF 23). Oral argument was held on November 26, 2024.

## III.   JURISDICTION AND STANDING

The Court of Federal Claims has jurisdiction over "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Courts hearing bid protests have summarized this jurisdictional requirement as three-pronged: a plaintiff may challenge (1) a solicitation by a federal agency; (2) an award or proposed award of a contract; or (3) any alleged violation of statute or regulation in connection with a procurement or proposed procurement. *See, e.g.*, *Percipient.ai, Inc. v. United States*, 104 F.4th 846, 846 (Fed. Cir. 2024), *vacated and rehearing en banc granted*, Order, No. 2023-1970 (Fed. Cir. Nov. 22, 2024); *22nd Century Techs., Inc.* 57 F.4th at 998.

To have standing to bring a bid protest in this court, a plaintiff must be an "interested party." 28 U.S.C. § 1491(b)(1). This standard is "more stringent" than the standing requirement under Article III. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). To show standing under § 1491(b)(1), a plaintiff must allege facts which, if true, "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

An offeror can demonstrate a direct economic interest in two ways. In a post-award bid protest, the plaintiff's complaint must "show that there was a 'substantial chance' it would have

received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)). The "substantial chance" test also applies to pre-award protests when the agency has reviewed the bids but has not yet made an award. *Orion Tech. v. United States,* 704 F.3d 1344, 1348 (Fed. Cir. 2013).

In place of the "substantial chance" test, an offeror in a pre-award protest may establish a direct economic interest by demonstrating the solicitation or bidding process caused it to suffer a "non-trivial competitive injury." *Weeks Marine v. United States*, 575 F.3d at 1361-62. This exception applies when a "prospective bidder" challenges the solicitation's terms, "prior to actually submitting a bid." *Orion Tech.*, 704 F.3d at 1348.

The parties do not dispute that Radiance has standing to pursue this protest as a holder of the OASIS-SB contract who desires to compete for the task order. The defendant disputes jurisdiction under FASA's ban on protests challenging the issuance or proposed issuance of a task order.

Under FASA, the Court of Federal Claims lacks jurisdiction to hear protests "in connection with the issuance or proposed issuance of a task or delivery order." 41 U.S.C. § 4106(f). Dismissal of complaints under the FASA task-order bar has historically been for lack of subject-matter jurisdiction pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1). *See 22nd Cent. Techs.*, 57 F.4th at 998 (cleaned up) (concluding the Court of Federal Claims has "no room to exercise jurisdiction over claims made in connection with the issuance or proposed issuance" of a task order); *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1412 (Fed. Cir. 2014); *Computer World Servs. Corp. v. United States*, No. 24-1095, 2024 WL 4562850, at *3 (Fed. Cl. Oct. 21, 2024); *Unison Software, Inc. v. United States*, 168 Fed. Cl. 160, 166 (2023).

The Federal Circuit's recent decision in *Percipient.ai*, however, identified a circumstance in which FASA does not bar a protest involving task order.[3] The Federal Circuit held that the FASA task-order bar did not prevent a supplier of commercial software from challenging a task order that the supplier alleged violated a statutory preference for products available commercially and a statutory obligation for the procuring agency to conduct market research. *Percipient.ai*, 104 F.4th at 847-48. Although FASA bars protests "in connection with the

---

[3] On November 22, 2024, the Federal Circuit granted *en banc* rehearing in *Percipient.ai*. Order, No. 2023-1970 (Fed. Cir. Nov. 22, 2024). The panel opinion was vacated. *Id*. at 3. Rehearing is limited to the issue of standing under 28 U.S.C. § 1491(b)(1). *Id*. In granting rehearing, the Federal Circuit went on to note that the *en banc* court "will not revisit and will not require additional briefing on the issue[] of task bar under [FASA] . . . ." *Id*. The implication is that if the full Federal Circuit reinstates the panel's standing decision, it will then reinstate the panel's FASA analysis. Therefore, even though the panel decision in *Percipient.ai* has been vacated, its FASA analysis will be applied to Radiance's claim, as there is no question that Radiance has statutory standing.

issuance or proposed issuance of a task or delivery order," 41 U.S.C. § 4106(f)(1), the Federal Circuit panel majority held that the plaintiff's claim was "directed to [the agency's] violation of [the statute] and related regulations *after* issuance of the task order." *Id.*, at 847 (emphasis added). Percipient.ai neither protested the agency's decision in issuing the task order nor sought to change anything about the task order itself. In that context, the Federal Circuit held that the Court of Federal Claims could exercise jurisdiction over the protest because it involved contract administration, not the issuance of the task order. *Id.*

## IV. STANDARD OF REVIEW

The defendant moves to dismiss the protest for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Under RCFC 12(b)(1), a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of the Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

## V. DISCUSSION

In its motion for judgment on the administrative record, the plaintiff argues that its protest is not precluded by FASA. The plaintiff posits that its challenge to the task order's recertification requirement contests neither "the issuance [n]or the proposed issuance" of the task order. (ECF 20 at 11.) It frames the task order's current posture as both pre-issuance and pre-proposed issuance, and, therefore, FASA does not bar the protest. *Id*. at 12.) The plaintiff argues that the "issuance" of a task order means the "award" of the task order. (*Id.* at 13.) Because no task order has been awarded, Radiance explains, no task order has been "issued." The plaintiff explains that there has also been no "proposed" issuance of a task order; the "proposed issuance" of a task order "essentially means 'proposed award.'" (*Id.*) No award of the task order has been made or proposed; therefore, according to Radiance, FASA's jurisdictional bar on judicial protests does not apply.

The plaintiff's emphasis on FASA's bar to protests that challenge the "issuance" of a task order seeks to track the Federal Circuit's decision in *Percipient.ai*, 104 F.4th at 847-48. As noted, the Federal Circuit majority held in *Percipient.ai* that the FASA task-order bar did not prevent a supplier of commercial software from challenging a task order that the supplier alleged violated a statutory preference for commercial products and a statutory obligation for the procuring agency to conduct market research. *Id*. FASA bars protests "in connection with the issuance or proposed issuance of a task or delivery order." 41 U.S.C. § 4106(f)(1). The Federal Circuit held in *Percipient.ai* that the plaintiff's claim was "directed to [the agency's] violation of [a statute] and related regulations *after* issuance of the task order." *Percipient.ai*, 104 F.4th at

847 (emphasis added). Therefore, the protest fell outside FASA's task-order bar because it neither protested the agency's decision in issuing the task order nor sought to change anything about the task order itself.

In *Percipient.ai*, the Federal Circuit focused on the claims for relief in the complaint. None of Percipient.ai's allegations "deal[t] with how [the agency] worded, issued, or proposed to issue its task order," and none of its allegations claimed that the task order's "language . . . forced the alleged statutory violations to occur." *Id.* at 849. In that specific context, the Federal Circuit majority held, the Court of Federal Claims could exercise jurisdiction over the plaintiff's protest because it involved contract administration, not the issuance of the task order. *Id.*

Radiance's protest, however, alleges that the language of the task-order solicitation itself violates the FAR by requiring offerors to recertify their status as small businesses. The alleged violation of law is connected directly to a requirement within the solicitation and not to any post-award, ongoing post-award obligation imposed by law on the Army. This protest lacks the distinctive element under which the Federal Circuit determined that Percipient.ai's protest could go forward. As the Federal Circuit explained, *Percipient.ai* "present[ed] the . . . question of who qualifies as an 'interested party' . . . where the challenged harm-causing action is *not* the solicitation, the award, or the proposed award of a contract." *Id.* at 852.

The *Percipient.ai* opinion made clear that the Federal Circuit was identifying a path that sidestepped FASA in a scenario not covered by its previous FASA task-order decisions, *22nd Century Technologies* and *SRA International*. A protest can avoid the task-order bar when "the requested relief would not alter [the agency's] issuance" of the task order. *Percipient.ai*, 104 F.4th at 851. Here, the relief sought would necessarily affect the forthcoming issuance of the task order by allowing additional holders of the OASIS-SB contract not currently qualified to submit an offer to be considered for the award.

Applying the Federal Circuit's *Percipient.ai* approach of examining the relief sought by the complaint makes the plaintiff's effort to avoid the FASA bar crumble. The complaint requests a declaration that the Army's decision to require bidders to recertify their small business status was unlawful, and an injunction directing the Army to reissue the solicitation without the recertification requirement. (ECF 1 at 17.) The injunction would require the Army to amend or reissue the solicitation before proceeding to award the task order. As the Federal Circuit explained in *SRA International*, such relief reflects that a protest is in connection with the issuance or proposed issuance of a task order. 766 F.3d at 1414. It was precisely the absence of any request or need for that type of relief that undergirded the decision in *Percipient.ai*.

As Senior Judge Smith recently opined, *Percipient.ai* "is not the watershed moment" for protests of task orders, and that decision does "[n]ot [mean that] every agency task order action is now up for review." *Computer World Servs.*, 2024 WL 4562850, at *3. Instead, to avoid FASA's task-order bar, a protest must fall within the scope of the relief sought by the plaintiff in *Percipient.ai*. Absent the distinctive circumstances of *Pecipient.ai*, Radiance's protest must establish the Court of Federal Claims' jurisdiction under the otherwise still-binding decisions in *22nd Century Technologies* and *SRA International*. Radiance's effort to minimize or parse those decisions away must be left to the Federal Circuit. Until that higher court cabins those decisions,

they are still the governing and binding precedents to be followed in protests that fall outside the scope of *Percipient.ai*.

Thus, even in a post-*Precipient.ai* landscape, it remains true that FASA "gives the court no room to exercise jurisdiction over claims made in connection with the issuance or proposed issuance" of a task order. *SRA Int'l*, 766 F.3d at 1413. Although a protest may allege a "violation of statute or regulation . . . the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order." *Id.* FASA's language refers to an agency action that is "directly and causally connected to" the issuance or proposed issuance of a task order. *SRA Int'l*, 766 F.3d at 1413.

Courts have found such a direct and causal connection in several scenarios. The Federal Circuit has indicated that a protest requesting that an agency rescind or otherwise modify a proposed task order is a protest connected to the issuance or proposed issuance of the task order. The Circuit reached this conclusion by focusing, as it did in *Percipient.ai*, on the relief being sought. *See SRA Int'l*, 744 F.3d at 1414. Likewise, a protest challenging an agency's interpretation of a requirement of the solicitation was determined to be connected to the issuance or proposed issuance of a task order. *See 22nd Cent. Techs., Inc. v. United States*, 157 Fed. Cl. 152, 157 (2021), *aff'd*, 57 F.4th 993 (Fed. Cir. 2023).

Radiance challenges a requirement of the task order's solicitation: that offerors must recertify their status as a small business to submit a proposal to the solicitation. In *22nd Century Technologies*, the protestor challenged an agency's interpretation of the SBA's size regulations and its subsequent determination that the protestor was too large to qualify for small-business status. 57 F.4th at 997. The Federal Circuit affirmed Judge Firestone's determination that "'the allegations made and relief sought in 22nd Century's complaint draw a direct and causal connection between the task order and [the agency's] challenged decisions.'" *Id.* at 998-99 (quoting *22nd Cent. Techs., Inc. v. United States*, 157 Fed. Cl. at 157). Radiance too protests an agency decision to include a size-recertification requirement in the solicitation and challenges the basis for the agency's exercise of discretion on FAR 52.219-28(c), which was not in effect at the time Radiance was awarded the OASIS-SB contract. The recertification requirement must be fulfilled for a prospective offeror to participate in the task order's solicitation. Undoubtedly, the solicitation's recertification requirement order has a "direct and causal connection" to the issuance or proposed issuance of the task order.

These Federal Circuit precedents involve post-award protests. Pre-award agency actions, like Radiance's challenge, have also been found to be connected to the issuance or proposed issuance of a task order. In *InSap Services, Inc. v. United States*, 145 Fed. Cl. 653 (2019), the plaintiff challenged the Army's decision to bundle several contracts for information-technology services under a single task order. *Id.* at 655. The plaintiff, which provided services under one of the contracts to be bundled, did not hold a contract under the relevant IDIQ contract and was ineligible to compete for the task order. The plaintiff protested the solicitation at the pre-award stage; it argued that FASA did not bar its protest because it was challenging only the bundling decision, *i.e.,* a decision "antecedent to the solicitation, not the solicitation itself." *Id.* at 654. The protest was not connected to the task order, because the plaintiff "would have grounds to

protest regardless of the contracting vehicle" the agency had chosen to use. *Id.* Judge Wheeler rejected that argument, holding that the Federal Circuit's reasoning in *SRA International* governed the protest. *Id.* at 655. The fact that the plaintiff had brought its protest while the solicitation was still open did not disconnect the protest from the proposed issuance of the task order. As Judge Wheeler explained, "the Army's discretionary decision to bundle the services prior to the task order solicitation is in connection with the task order." *Id.* This decision reflects the breadth courts have given to the holding in *SRA International*.

Radiance's challenge in this court to the solicitation's recertification requirement is barred by FASA. The protest falls outside of the narrow, post-award factual scenario found beyond the scope of FASA in *Percipient.ai*, because Radiance seeks amendments to the task order before it has even been awarded. Without the safe harbor of *Percipient.ai*, the Federal Circuit's earlier FASA-related precedent applies. Under those precedents, FASA gives courts "no room" to exercise jurisdiction over protests brought "in connection with the issuance or proposed issuance of a task order." *SRA Int'l*, 766 F.3d at 1412.

## VI.   CONCLUSION

Radiance has failed to show that the Court of Federal Claims may exercise jurisdiction over its protest. Its challenge to the solicitation's recertification requirement is connected directly to the proposed issuance of a task order and is barred by FASA. Accordingly, the defendant's motion to dismiss for lack of jurisdiction is granted. The plaintiff's motion for judgment on the administrative record is denied. The defendant's cross-motion for judgment on the administrative record is denied as moot. A separate order will direct the entry of judgment.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**